UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTHONY DEMASI,

    Defendant.
_____/

Case No. 1:22-cr-20670

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Defendant Anthony Demasi is charged with three counts of bank fraud and three counts of aggravated identity theft for three different schemes to defraud three different banks by filing fraudulent credit card applications using three people's identification information without their knowledge or authorization. In light of a June 2023 Supreme Court decision that clarified the elements of aggravated identity theft, Defendant seeks dismissal of the three aggravated identity theft counts, arguing they lack sufficient specificity. But Defendant misconstrues this Supreme Court case which is factually distinguishable and does not alter the conclusion that the current Superseding Indictment is sufficiently specific. Accordingly, Defendant's Motion to Dismiss will be denied.

I.

Defendant Anthony Demasi currently faces a six-count Superseding Indictment charging three counts bank fraud in violation of 18 U.S.C. § 1344(1) (Counts I, III, and V) and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Counts II, IV, and VI) for three different schemes to defraud three different banks by filing false credit card applications

using the full name, date of birth, and Social Security number of three different people without their knowledge or consent. ECF No. 21.

The first alleged scheme began on January 4, 2018, when Defendant submitted a credit card application to Barclays Bank Delaware (Barclays) using "Person A's" identification information. *Id.* at PageID.77–79. The second alleged scheme began on March 6, 2018, when Defendant submitted another false credit card application to JP Morgan Chase Bank NA (Chase) using "Person B's" identification information. *Id.* at PageID.79–80. The third and final alleged scheme began on August 31, 2018, when Defendant submitted yet another false credit card application to Capital One Bank NA (Capital One) using "Person C's" identification information. *Id.* at PageID.81–82.

On July 20, 2023, Defendant filed a Motion to Dismiss Counts II, IV, and VI of the Superseding Indictment (the "aggravated identity theft counts") for lack of specificity arguing they fail to specify who Persons A, B, and C are, how Defendant obtained these identities, and how the identities were used in relation to the alleged bank fraud schemes. ECF No. 27 at PageID.94–97. Defendant argues that the Supreme Court's recent holding in *Dubin v. United States*, 599 U.S. 110 (2023)—which clarified how the word "use" is interpreted under 18 U.S.C. § 1028A(a)(1)— requires the Superseding Indictment to show that Defendant's *use* of the alleged victim's identities was at the "crux" of what made the underlying bank fraud criminal. *See id.* at PageID.97–103.

In response, the Government argues that *Dubin* is inapplicable and that Defendant's "use" of the victim's personal identification information "was the crux of what made his conduct criminal." ECF No. 32 at PageID.155. The Government also proffers additional facts.[1] *See id.* at

---

[1] The Government claims that Persons A, B, and C were all college students hired by Defendant to work for Defendant's consulting firm, Goldman Advisors, in late 2017 and early 2018. *See generally* ECF No. 32 at PageID.151–55. The Government alleges that, throughout the interview

PageID.151–55. Ultimately, the Government argues that the aggravated identity theft counts are properly pled, as they "clearly and concisely state the elements of the offense, the basic facts underlying the offense, and put [Defendant] on clear notice of the charges he faces, while protecting him from later being charged with the same offense." *Id.* at PageID.155.

## II.

An indictment is sufficient if it (1) "contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend," and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Coss*, 677 F.3d 278, 287 (6th Cir. 2012) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Although the indictment may "state[] the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense," *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001), "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged," *Hamling*, 418 U.S. at 117–18 (internal quotation marks and citation omitted).

---

process, Defendant asked A, B, and C for their full names, dates of birth, and Social Security numbers and that each provided the requested personal identification information, believing it was needed for income-tax reporting purposes. *Id.* Instead, the Government alleges, Defendant used A, B, and C's information to submit three online credit card applications to Barclays, Chase, and Capital One, respectively, without the authorization or knowledge of A, B, or C. *Id.* Although one credit card application was denied, the Government alleges that Defendant charged a total of nearly $14,000 to the other two cards and even represented himself as Person C in phone conversations with Capital One to obtain a card and continue charging it. *Id.* Although this information is helpful context, Defendant correctly points out that Defendant's "motion to dismiss is about the charge, not the facts the [G]overnment believes it may show at the time of trial. The Court, therefore, need not consider" this factual context as "the question presented involves the face of the . . . Superseding Indictment." ECF No. 33 at PageID.164; *see United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) ("[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based.")

Importantly, "Courts u[s]e a common-sense construction in determining whether an indictment sufficiently informs a defendant of an offense[,]" *United States v. Ross*, No. 1:23-CR-20168, 2023 WL 4747370, at *1 (E.D. Mich. July 25, 2023); *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000); *Allen v. United States*, 867 F.2d 969, 971 (6th Cir. 1989)), and "an indictment is to be construed liberally in favor of its sufficiency." *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019) (quoting *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007)). Indeed, "[t]he indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *Id.*

### III.

Counts II, IV, and VI of the Superseding Indictment sufficiently allege aggravated identity theft because the criminal statute, 18 U.S.C. § 1028A(a)(1) contains the elements of the offense and each Count fully alleges each element with enough factual specificity to place Defendant on notice of the specific offense charged. Contrary to Defendant's argument, *Dubin* does not mandate a different conclusion. Accordingly, Defendant's Motion to Dismiss will be denied.

### A.

In 2004, Congress passed the Identity Theft Penalty Enhancement Act, 18 U.S.C. § 1028A, which criminalized aggravated identity theft as a sentencing enhancement in response to national concerns about identity theft following the attacks of September 11, 2001[2] and concerns that "existing laws did not sufficiently deter repeat offenders, many of whom used new technology that made it easier to collect other people's information." Shang-Chi Andrew Liu, *What's the Use?: Interpreting the Term "Uses" in the Aggravated Identity Theft Provision*, 89 U. CHI. L. REV. 1289,

---

[2] Indeed, subsection (b) of the criminal statute applies a more significant enhancement for the transfer, possession, or use of another's identity during and in relation to a terrorism offense. *See* 18 U.S.C. § 1028A(b).

1297 (2022). Defendant is specifically charged with three violations of 18 U.S.C. § 1028A(a)(1) which provides:

> [w]hoever, during and in relation to any felony violation enumerated in subsection (c),[3] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of [two] years.

18 U.S.C. § 1028A(a)(1). As evident from the language, the elements of aggravated identity theft include: (1) that the defendant committed a qualifying predicate felony enumerated in § 1028A(c); (2) that the defendant knowingly transferred, possessed, or used a means of identification of another person without lawful authority; (3) that the defendant knew the means of identification belonged to another person; and (4) that the transfer, possession, or use was "during and in relation to" the § 1028A(c) predicate felony. *See* PATTERN CRIM. JURY INSTR. 6th Cir. 15.04, at 407 (2023).

In *Dubin v. United States*, decided on June 8, 2023, the Supreme Court clarified the interpretation of the second and fourth elements listed above—that a defendant *used* another's identification information without lawful authority *in relation to* or *during* the commission of a predicate felony. *See Dubin*, 599 U.S. at 116–18. In *Dubin*, petitioner David Dubin—who helped manage a psychological service company—submitted a reimbursement claim to Medicaid representing that a licensed phycologist had performed testing services when, in reality, only a licensed phycological *associate* had. *Id.* at 114. "This falsehood inflated the amount of the reimbursement." *Id.* As a result, Defendant was convicted with the predicate crime of healthcare fraud, 18 U.S.C. § 1347, and aggravated identity theft, 18 U.S.C. § 1028A(a)(1). *Id.* at 114–15.

---

[3] Subsection (c) states that "any provision contained in chapter 63" qualifies as a predicate felony for aggravated identity theft. 18 U.S.C. § 1028A(c)(5). Importantly, bank fraud, 18 U.S.C. § 1344, as charged within Counts I, III, and V of the Superseding Indictment, is "contained in chapter 63" and, therefore, is a qualifying predicate felony for aggravated identity theft. *See* 18 U.S.C. § 1344; ECF No. 21 at PageID.77, 79–82.

The Government charged Dubin with aggravated identity theft because "[his] fraudulent billing included [a] patient's Medicaid reimbursement number" and the Government interpreted this Medicaid number as a "means of identification" under § 1082A(a)(1). *Id.* at 115. Dubin challenged his aggravated identity theft conviction, arguing that he did not *use* a patient's identity when overbilling Medicaid and that, under § 1082A(a)(1), "the means of identification [must be] at the crux of what makes the predicate offense criminal, rather than merely an ancillary feature[.]" *Id.* at 117.

Although the District Court seemingly agreed with Dubin, noting his case did not "seem to be an aggravated identity theft case[,]" it affirmed his conviction based on Fifth Circuit precedent. *Id.* at 115. On appeal, the Fifth Circuit affirmed and, on rehearing en banc, affirmed again. *Id.* The Supreme Court granted certiorari to address a circuit split regarding how to interpret "use" and "in relation to," within the aggravated identity theft statute. The Court ultimately found in favor of Dubin and a narrow interpretation of the statute. *Id.* at 116. Specifically, the Court held:

> A defendant "uses" another person's means of identification "in relation to" a predicate offense *when this use is at the crux of what makes the conduct criminal*. To be clear, being at the crux of the criminality requires more than a causal relationship, such as "facilitation" of the offense or being a but-for cause of its "success." Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to "who" is involved.
>
> Here, [Dubin's] use of the patient's name was not at the crux of what made the underlying overbilling fraudulent. The crux of the healthcare fraud was a misrepresentation about the qualifications of [Dubin's] employee. The patient's name was an ancillary feature of the billing method employed.

*Id.* at 131–32 (emphasis added).

Here, Defendant argues the aggravated identity theft counts should be dismissed for lack of specificity because "*Dubin* teaches that aggravated identity theft is more than simply using

someone's identification in connection with a listed offense." ECF No. 27 at PageID.101. Defendant argues "[t]he aggravated identity theft counts here provide no information whatsoever on how the identification was obtained[,]" nor do they provide information "as to whose identification is at issue with what bank[.]" *Id.* at 102.

But Defendant's argument misconstrues *Dubin* and misunderstands the nature of the predicate felony bank fraud charges he faces. In reaching its holding in *Dubin*, the Supreme Court expressly relied on the Sixth Circuit's 2018 decision in *U.S. v. Michael*. In *Michael*, a pharmacist-defendant was charged with health care fraud and aggravated identity theft because he fraudulently submitted payment claims to an insurance company for dispensing medication "which was never dispensed" using the unauthorized "identification information" of a doctor and a patient to do so. *United States v. Michael*, 882 F.3d 624, 625 (6th Cir. 2018). The district court dismissed the aggravated identity theft count, interpreting the statute to only cover impersonation. *Id.* at 626. The Sixth Circuit reversed and developed a helpful heuristic: an aggravated identity theft charge will not lie when the defendant's misrepresentation at the crux of the predicate fraud goes to the *how, when, or why*. See *id.* at 628–29. On the other hand, an aggravated identity theft charge is proper when the misrepresentation at the crux of the fraud concerns *who* was involved. See *id.* at 629. The Sixth Circuit reasoned that, in the former circumstance, "the defendant used the means of identification *in spite of* the fraud [but,] in the other, [] used the means of identification *because of* the fraud." *Id.* (emphasis added).

In *Dubin*, the Supreme Court expressly endorsed and relied on this heuristic, noting that, although it will have its limits, "it neatly captures the thrust of the analysis, as [Dubin's] fraud was in misrepresenting *how* and *when* services were provided to a patient, not *who* received the services." *Dubin*, 599 U.S. at 132 (emphasis in original). Indeed, the Supreme Court agreed with

Dubin when he argued, relying on *Michael*, that his predicate fraud of overbilling Medicaid was quite different than that of a "pharmacist who swipes [patient] information from the pharmacy's files and uses it to open a bank account in a patient's name" because, this "use" of another's identification information would be integral to what made the conduct fraudulent, as the misrepresentation at the crux of the fraud was about *who* was involved. *Dubin* at 117–18.

But, here, like this hypothetical pharmacist, Defendant's alleged bank fraud schemes were all about the *who*. And the Superseding Indictment is sufficiently specific as to both this underlying predicate fraud and Defendant's unauthorized "use" of another's identification information.

**B.**

Each aggravated identity theft count within the Superseding Indictment alleges:

> [I]n the Eastern District of Michigan, [Defendant] did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)(5), to wit: Bank Fraud in violation of [18 U.S.C. § 1344], knowing that the means of identification belonged to another actual person, in violation of [18 U.S.C. § 1028A(a)(1)].

ECF No. 21 at PageID.78–80, 82. Indeed, the only differentiating feature of each aggravated identity theft count is the date. Count II alleges that Defendant used another's identity without authorization to commit bank fraud "[o]n or about January 4, 2018," *id.* at PageID.78, Count IV alleges the same occurred "[o]n or about March 6, 2018," *id.* at PageID.80, and Count VI alleges the same occurred "[o]n or about August 31, 2018." *Id.* at PageID.82.

Viewing the aggravated identity theft counts in isolation; each faithfully recites the elements of 18 U.S.C. § 1028A(a)(1). *See id.* at PageID.78–80, 82; *see also* PATTERN CRIM. JURY INSTR. 6th Cir. 15.04, at 407 (2023). Each also sufficiently places Defendant on fair notice of the specific offenses contemplated by alleging the specific date that each aggravated identity theft allegedly occurred. *See* ECF No. 21 at PageID.78–80, 82.

Viewing the indictment as a whole, each aggravated identity theft count (Counts II, IV, and VI) immediately follows a corresponding bank fraud count (Counts I, III, and V). *See generally* ECF No. 21. In this way, the Superseding Indictment is best thought of as charging three sets of criminal conduct, each containing one bank fraud count and one aggravated identity theft count which both reference one another. In addition to specifying both the bank and person involved in each alleged bank fraud scheme, each bank fraud count references the corresponding aggravated identity theft count by alleging Defendant defrauded each bank by "fraudulently applying for a credit card in the name of a third party and using[,] without lawful authority[,] the personal identification information of an unwitting third party to include: name, date of birth, and Social Security number." *Id.* at PageID.78–81.

And each aggravated identity theft count references the corresponding bank fraud count, too. First, each aggravated identity theft count specifically alleges that Defendant's knowing and unauthorized use of another's personal identification information occurred during and in relation to the specific crime of *bank fraud*, rather than a general qualifying predicate felony enumerated in § 1028A(c). *Id.* at PageID.79–80, 82. Second, the dates listed on each aggravated identity theft count do more than merely put Defendant on fair notice of the charged conduct in each isolated count, they also match the date that each bank fraud scheme allegedly occurred. In Count II, the Superseding Indictment alleges Defendant's first instance of aggravated identity theft occurred on January 4, 2018 and, in Count I, the Superseding Indictment alleges Defendant's first bank fraud scheme began on this same date. *Id.* at PageID.77–78. Similarly, Count IV alleges Defendant's second aggravated identity theft occurred on March 6, 2018—the same date that Count III alleges Defendant's second bank fraud began. *Id.* at PageID.79–80. And Count VI alleges Defendant's

third aggravated identity theft occurred on August 31, 2018, which matches the date Count V alleges Defendant's third bank fraud began. *Id.* at PageID.81–82.

In sum, whether the aggravated identity theft counts are read in isolation or in context of the Superseding Indictment as a whole, the conclusion is the same: the counts contain the elements of the charged offense and fairly inform Defendant of the contemplated criminal conduct. The aggravated identity theft counts are sufficiently specific. *See Coss*, 677 F.3d at 287 (6th Cir. 2012).

Yet, in his Reply to the Government's Response to his Motion to Dismiss, Defendant cites *United States v. Gladden*, a nonbinding Eleventh Circuit case, as an example of a post-*Dubin* case invalidating an aggravated identity theft charge "if it does not allege that the use of the identity was at the crux of the criminality." ECF No. 33 at PageID.166. But Defendant is once again mistaken.

*Gladden* concerned a claim that a conviction lacked sufficient evidence; not that an indictment lacked specificity. *United States v. Gladden*, 78 F.4th 1232, 1242 (11th Cir. 2023). In *Gladden*, two defendants defrauded insurance companies by obtaining inflated reimbursements. *Id.* at 1239–40. One of the defendants—Linton—forged the identity of patients to "continue refilling prescriptions in their names, even through they were neither aware of nor received any products." *Id.* at 1245. The other defendant—Gladden—merely helped obtain medically unnecessary perceptions using pre-filled forms but did not misrepresent the identity of the patient in the process. *Id.* at 1248–49. Consistent with the Sixth Circuit's heuristic in *Michael*, endorsed by the Supreme Court in *Dubin*, the court in *Gladden* affirmed Linton's aggravated identity theft conviction because Linton's "deception centered on the identity of the individual receiving the product." *Id.* at 1245. And although the court vacated Gladden's aggravated identity theft conviction, it did so only because (1) unlike Linton, Gladden's misrepresentations did not involve

*who* received prescriptions and, instead, involved only whether the prescriptions were medically necessary; and (2) the jury instructions at trial failed to reflect the ways in which *Dubin* altered the interpretation of the aggravated identity theft statute. *Id.* at 1248–49. Indeed, *Gladden* is devoid of any discussion as to the specificity of the charging indictment.

A better example of a post-*Dubin* case concerning indictment sufficiency is *United States v. Percell*. But this case supports, rather than undermines, the conclusion that the Superseding Indictment here was sufficiency specific. In *Percell*, a defendant who used a deceased person's name and Social Security number to obtain financial benefits filed a motion to dismiss the aggravated identity theft count alleged against him in light of *Dublin*. *United States v. Percell*, No. CR 22-259, 2023 WL 5538026, at *1 (E.D. Pa. Aug. 27, 2023). But the Eastern District of Pennsylvania denied the defendant's motion because the crux of the predicate fraud involved misrepresentations about *who* was receiving benefits. *Id.* at *3. More importantly, the sole aggravated identity theft count within the larger twelve-count *Percell* indictment merely alleged:

> [The d]efendant knowingly and without lawful authority, used a means of identification of another person, that is, the name, birthdate, and social security number of "D.S.," during and in relation to passport fraud, in violation of Title 18, United States Code, Section 1542.
>
> In violation of Title 18, United States Code, Sections 1028A(a)(1), (c)(1).

*Id.* at *2. Like the aggravated identity theft counts here, the *Percell* aggravated identity theft count did not specifically name the individual whose identification information was used by the defendant, did not specify how the defendant obtained this information or used it in relation to the predicate fraud, and did not specify the defrauded agency or organization. Yet the indictment was still sufficiently specific. The same result here.

In sum, under a common sense reading of the Superseding Indictment, the aggravated identity theft counts Defendant seeks to dismiss are sufficiently specific. Each contain the elements

- 11 -

of the criminal statute and contain enough information to place Defendant on fair notice of the specific offense alleged in each count.

C.

Lastly, this Court turns to Defendant's assertion that the aggravated identity theft statute is unconstitutionally vague. In his Motion to Dismiss, Defendant discusses Justice Gorsuch's *Dubin* concurrence which viewed 18 U.S.C. § 1028A as unconstitutionally vague. ECF No. 27 at PageID.100–101; *see also Dubin*, 599 U.S. at 133 (Gorsuch, J., concurring). Indeed, buried in a footnote at the end of Defendant's Motion to Dismiss, he argues "[n]eedless to say, an alternative basis for relief here is that the offense alleged in the three [aggravated identity theft] counts is unconstitutionally vague[.]" Id. at PageID.103. But Defendant again misconstrues *Dubin* and cites case law which bellies his own argument. In *Gladden*, the post-*Dubin* case cited by Defendant discussed above, the Eleventh Circuit specifically declined to find § 1028A unconstitutionally vague because the "question of vagueness was not directly before the Court in *Dubin*" and the majority noted its express disagreement with Justice Gorsuch's analysis. *Gladden*, 78 F.4th at 1247; *see also Dubin*, 599 U.S. at 132 n.10 ("The concurrence's bewilderment is not, fortunately, the standard for striking down an Act of Congress as unconstitutionally vague."). This Court follows suit for the same reasons.

IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss Counts II, IV, and VI of the Superseding Indictment, ECF No. 27, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: October 12, 2023  s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge