UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ANTHONY DEMASI,

       Defendant.
_____/

Case No. 1:22-cr-20670

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RELEASE ON BOND PENDING APPEAL, AND DENYING DEFENDANT'S MOTION TO EXTEND SELF-REPORTING DATE**

After pleading guilty to one count of bank fraud and one count of identify theft, Defendant Anthony Demasi was sentenced to a total of one year and one day of imprisonment. Although Defendant's Rule 11 Plea Agreement contained an unambiguous appeal waiver, Defendant appealed his conviction one week after sentencing. Defendant now seeks to be released on bond pending his appeal, and relatedly seeks to adjourn the date on which he is supposed to self-report to the Bureau of Prisons to begin his criminal sentence. As explained below, both motions will be denied.

**I.**

Defendant Anthony Demasi was named in an April 2023 Superseding Indictment charging three counts of bank fraud in violation of 18 U.S.C. § 1344(1) and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) for three different schemes to defraud three different banks by filing false credit card applications using the names, birthdates, and Social Security numbers of three different people without their knowledge or consent. ECF No. 21. The alleged facts underlying these schemes are summarized below:

[T]he first alleged scheme began on January 4, 2018, when Defendant submitted a credit card application to Barclays Bank Delaware (Barclays) using "Person A's" identification information. The second alleged scheme began on March 6, 2018, when Defendant submitted another false credit card application to JP Morgan Chase Bank NA (Chase) using "Person B's" identification information. The third and final alleged scheme began on August 31, 2018, when Defendant submitted yet another false credit card application to Capital One Bank NA (Capital One) using "Person C's" identification information. As a part of this scheme, the Government alleges that Defendant impersonated at least one of these victims in phone conversations with the bank he allegedly sought to defraud.

Persons A, B, and C were students hired by Defendant to work or intern for his businesses between late 2017 and early 2018 who gave Defendant their personal identification information while interviewing and onboarding for their internship.[1]

Defendant allegedly filed a credit card application with Barclays using Person A's identification information while Person A was interning for Defendant. The same day Defendant filed the application, he emailed "Person A that he added her name to an existing office Barclays account" and told her to bring him the credit card when it arrived. Person A did so, and although Defendant eventually returned the card, Defendant never provided the PIN, so Person A was unable to access the account.[2] But Defendant could access the account, and the Government alleges he charged $3,969.79 to the card issued in Person A's name. Person A became aware of the charges one month later when she checked her credit score.

The credit card application Defendant allegedly falsely submitted in Person B's name was denied. On March 7, 2018, Person B discovered this denial—and the credit card application—when she received a letter from Chase informing her that an application for a credit card in her name had been denied.

Person C stopped working for Defendant in the first week of August 2018. But, on August 31, 2018, Defendant allegedly used Person C's identification information to apply for a credit card with Capital One. This application was approved but Person C did not know about the application until he was notified by a credit reporting service that he owed over $9,700 on a credit card account he knew nothing about and did not authorize.

---

[1] Defendant argues that Persons A, B, and C were not all student-interns who worked for Defendant's businesses. ECF No. 50 at PageID.344.

[2] Defendant concedes that he emailed Person A and added her to the Barclays account but maintains he never told Person A to bring him the card upon arrival and that Person A had access to the account. ECF No. 50 at PageID.344.

*United States v. Demasi*, 715 F. Supp. 3d 1009, 1012–13 (E.D. Mich. 2024) (internal citations omitted) (footnotes in original).

After denying a series of Defendant's pretrial motions including a motion to suppress, Defendant pleaded guilty to one count of bank fraud, 18 U.S.C. § 1344(1), and one count of identity theft, 18 U.S.C. § 1028(a)(7) in March 2024. *See* ECF Nos. 56 (superseding information); 57 (consent to enter guilty plea); 60 (plea agreement); 66 (plea hearing transcript). On September 12, 2024, this Court accordingly sentenced Defendant to a total of one year and one day of imprisonment, followed by three years of supervised release. ECF No. 82 at PageID.770–71. The Bureau of Prisons (the "BOP") directed Defendant to report to FCI Terre Haute on October 24, 2024 to begin his sentence. ECF No. 85-1.

But, in September 2024, Defendant filed a notice of appeal, ECF No. 83, seemingly in disregard of his appeal waiver. ECF No. 60 at PageID.396. And, in early October 2024, Defendant filed a motion to extend his reporting date due to medical complications. ECF No. 85. Defendant's claims of medical complications were supported by medical records and notes from his treating physician, *see* ECF No. 85-1, and the Government did not oppose Defendant's requested extension. *See* ECF Nos. 89; 90. So, on October 9, 2024, this Court extended Defendant's self-report date to January 1, 2025. ECF No. 91 at PageID.795.

On December 24, 2024—one week before his extended self-report date—Defendant filed a *second* Motion to Extend his self-report date. ECF No. 99. And Defendant separately filed a motion to be released on bond pending his appeal. ECF No. 94. Each outstanding motion will be addressed in turn.

## II. Defendant's Motion for Release on Bond Pending Appeal

This Court first considers Defendant's Motion for Release on Bond Pending Appeal, ECF No. 94. Because Defendant has not shown that his appeal raises a substantial question of law or fact likely to result in reversal, Defendant's Motion will be denied.

### A.

"The Bail Reform Act, 18 U.S.C. § 3143(b) creates a presumption against release pending appeal." *United Sates v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002). However, a defendant can rebut this presumption and "establish entitlement to release pending appeal" by showing: (1) "clear and convincing evidence[] that he is not likely to flee or pose a danger to the safety of another person or the community," and (2) "that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, [a] new trial, or a sentence that does not include a term of imprisonment." *Id.* (citing 18 U.S.C. § 3143(b)); *accord United States v. Katsma*, 147 F. App'x 561, 565 (6th Cir. 2005). "[A]n appeal raises a substantial question when the appeal presents a 'close question or one that could go either way' and that the question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir.1985) (quoting *United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir. 1985) (en banc)).

### B.

This Court need not address the former part of this two-part test because Defendant has not satisfied the latter. Even if Defendant showed clear and convincing evidence that his release pending appeal would not pose a flight risk or danger to the community,[3] the Motion would still

---

[3] Defendant avers that he "will not [f]lee" because he "does not possess a passport," "has substantial community ties" including local family and employment, and has a "record of appearing for court hearing[s]." ECF No. 94-1 at PageID.879–81. Defendant also avers that he his

- 4 -

be denied because Defendant has not shown that his appeal raises a substantial question of law or fact likely to result in reversal.

Defendant's appeal is rooted in alleged prosecutorial misconduct, which Defendant avers he "discovered . . . *after* the hearing and decision on []Defendant's Motion to Suppress, a Freedom of Information Request, and after the Plea Agreement had been tendered." ECF No. 94-1 at PageID.885 (emphasis added). Defendant specifically alleges that the Government's trial counsel "repeatedly performed actions that were obvious violations of basic tenets of Constitutional law." ECF No. 94-1 at PageID.884. But Defendant has not provided *any* evidence that would suggest such sweeping, serious claim would succeed on appeal.

"For prosecutorial misconduct to rise to the level of a constitutional violation, the conduct of the prosecutor must have '*so infected* the trial with unfairness as to make the resulting conviction a denial of due process.'" *Sowell v. Collins*, 557 F. Supp. 2d 843, 911 (S.D. Ohio 2008), *aff'd sub nom. Sowell v. Anderson*, 663 F.3d 783 (6th Cir. 2011) (*quoiting Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir.2006)) (emphasis added). Defendant's splatter of misconduct allegations come nowhere close to satisfying this high standard.

**1.**

First, Defendant claims that the Government's trial counsel engaged in prosecutorial misconduct by subjecting him to "undue pre-trial delay" because the criminal investigation concluded in late 2018 but the grand jury did not return its first indictment until early 2023. ECF No. 94-1 at PageID.886. But pre-charge delay is only colorable prosecutorial misconduct if

---

release pending appeal does not pose danger to the community because his offense conduct did not involve violence and he has been "free on an unsecured bond for more than twenty-two months" without incident. *Id.* at PageID.881–83. The Government does not dispute either point, and does not identify any circumstances or evidence which otherwise suggests Defendants' release pending appeal presents a flight risk or danger to the community. *See* ECF No. 98.

prejudicial and "designed 'solely to gain a tactical advantage.'" *Leonard v. Warren*, No. 03CV71430-DT, 2005 WL 1349115, at \*6 (E.D. Mich. Jan. 31, 2005), *report and recommendation adopted*, No. 03-71430, 2005 WL 2072108 (E.D. Mich. Aug. 25, 2005) (quoting *United States v. Lovasco*, 431 U.S. 783, 790-95 (1977)). Although Defendant says—but does not show—that unnamed "key witnesses" prejudicially died during this delay, and that the delay caused other unnamed, hypothetical witnesses' memories to fade, Defendant does not even attempt to argue— let alone show—that the Government intentionally delayed proceedings to gain a tactical advantage. *See* ECF No. 94-1 at PageID.886.

**2.**

Second, Defendant seems to suggest that the Government's trial counsel engaged in misconduct because the evidence uncovered through a 2018 search of Defendants' businesses had "nothing to do" with why the search was authorized in the first instance. *Id.*; *see also United States v. Demasi*, 715 F. Supp. 3d 1009, 1014 (E.D. Mich. 2024). True, the 2018 search of Defendant's businesses was supported by probable cause that Defendant committed *wire and financial institution fraud*, and the affidavit in support of the search did not discuss alleged *identity theft*. *United States v. Demasi*, 715 F. Supp. 3d 1009, 1014–15 (E.D. Mich. 2024). But, as this Court has already held, evidence of Defendant's identity theft came through a separate, independent source: one of the student-victims of Defendants' identity theft scheme voluntarily came forward after receiving a letter from Chase bank denying a credit card application in her name which she never applied for, and reported to law enforcement that "a credit card was taken out in her name without her authorization while working for Defendant." *Id.* at 1021 ("Here, the Government has demonstrated by a preponderance of the evidence that law enforcement would have inevitably and

independently discovered Defendant's conduct giving rise to the 2022 indictment—Defendant's alleged credit card schemes—regardless of the . . . 2018 search of [Defendant's businesses].").

Regardless, how does this rise to the level of prosecutorial misconduct? Defendant does not say. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Without more, this conclusory allegation does not show that Defendant's appeal "raises a substantial question or law or fact likely to result in reversal." *Chilingirian*, 280 F.3d at 709; *see also United States v. Moore*, 849 F.2d 1474 (6th Cir. 1988) ( "[The] mere identification of issues does not demonstrate that an appeal establishes a substantial question entitling the defendant to release pending appeal under the Bail Reform Act.").

**3.**

Third, Defendant suggests that the Government's trial attorney engaged in misconduct by "object[ing] to [Defendant's] selection of [retained] counsel." ECF No. 94-1 at PageID.887. But this is wholly unsupported by the record. Initially, for reasons unknown, Defendant was represented by court-appointed counsel. *See* ECF Nos. 6; 7. But, on May 31, 2023, Defendant sought to withdraw his appointed counsel because he retained attorney Charles Chamberlain. ECF No. 15. Accordingly, this Court issued *two* orders directing Defendant to show cause why he should not be required to reimburse the United States, ECF No. 16, or the Federal Community Defender's Office, ECF No. 19, for the legal services he received from appointed counsel under the guise that he was unable to afford counsel. *See* 18 U.S.C. § 3006A(c). After Defendant responded that his parents recently agreed to pay for his newly-retained counsel and that he had "the ability to make modest payments" towards the services his court-appointed counsel provided,

- 7 -

ECF No. 22, this Court ordered Defendant to pay for the legal services his Court-appointed counsel provided before he and his parents retained counsel. ECF No. 23. Contrary to Defendant's claim, the Government never objected to Defendant's "selection of" counsel.

**4.**

Fourth, "[m]ost egregiously," Defendant accuses the Government's trial attorney of withholding "key exculpatory evidence" in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 94-1 at PageID.887. But Defendant never identifies what evidence was allegedly withheld, thus this Court has no way of assessing whether Defendant's prosecutorial misconduct appeal "raises a substantial question or law or fact likely to result in reversal." *Chilingirian*, 280 F.3d at 709; *see also Moore*, 849 F.2d at 1474.

**5.**

Similarly but separately, Defendant avers that the Government's trial attorney "made false claims" regarding Defendant's criminal behavior and character throughout "many" pretrial proceedings. ECF No. 94-1 at PageID.88. But Defendant does not identify what these alleged "false claims" were, instead noting only that they will be "proven [on] appeal." *Id.* Without more, this does not suggest Defendant's appeal raises a substantial question or law or fact likely to result in reversal.

**6.**

Sixth, Defendant accuses the Government's trial attorney of "obfuscate[ing]" proceedings by misleading the Court into believing that FBI Special Agent Bryan Butler—the affiant supporting the 2018 search of Defendant's businesses—was unavailable to testify at a suppression hearing. *Id.* at PageID.888–89 ("[Defendant] believes this was done intentionally to obfuscate the illegal search and seizure, hide the evidence, and prevent the examination of the Agent's conduct

and background[.]"). But, again, this is wholly unsupported by the record. At the December 26, 2023 Suppression Hearing, Counsel for the Government did not suggest that Agent Butler was *unavailable* to testify. *See* ECF No. 92. Instead, Government Counsel argued that his testimony was *unnecessary*, because Defendant's motion to suppress was "to be decided . . . based on the four corners of the affidavit" in appropriate context. *Id.* at PageID.831. This Court agreed, *id.* at PageID.834 ("I'm not seeing a justification for testimony from any of the law enforcement agencies based on the papers that we have right now"), yet informed the Parties that it would provide a draft set of facts which the Parties could object to on the record. *Id.* at PageID.834–35. And this Court told Defendant that, if he felt this Court's draft facts were "wrong," he could seek "additional proofs." *Id.* This Court filed its draft statement of facts on December 14, 2023, ECF No. 48, and Defendant filed his objections on January 4, 2024. ECF No. 50. Defendant requested an additional hearing to take the testimony of Agent Butler, among other witnesses. *Id.* at PageID.349. But this Court concluded no further testimony was necessary to resolve Defendant's motion to suppress, and denied the motion on February 7, 2024. ECF No. 51.

Accordingly, Defendant has not shown that Counsel for the Government "obstruct[ed] [his] ability to examine a material witness" and has not shown that this ground of his prosecutorial misconduct appeal presents a substantial question or law or fact likely to result in reversal.

### 7.

But Defendant's Motion for Bond Pending Appeal fails for an additional reason, separate from the merits of Defendant's appeal. Even if Defendant sufficiently supported any one of the six prosecutorial misconduct claims he plans to raise on appeal, his appeal is unlikely to result in reversal because Defendant *waived* his right to direct appeal in his Rule 11 Plea Agreement. Indeed, Defendant agreed to waive "any right he may have to appeal his conviction on any

grounds," unambiguously including direct appeals for prosecutorial misconduct.[4] ECF No. 60 at PageID.396; *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) ("It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995))).

To be valid, Defendant's waiver must have been entered into "knowingly, intelligently, and voluntary." *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). Defendant does not even attempt to argue that his appeal waiver was invalid. *See* ECF No. 94. Nor could he. Defendant signed his Rule 11 Plea Agreement after averring that he "read . . . th[e] entire document, . . . discussed it with his attorney, and ha[d] a full and complete opportunity to confer with his . . . attorney." ECF No. 60 at PageID.400. He expressly agreed that he "underst[ood]" the Rule 11 Plea Agreement in its entirety *Id.* A transcript of Defendant's May 2024 plea hearing further reflects his knowingly, intelligent, and voluntary appeal waiver:

> **The Court**: The final thing that I want to make sure that people realize is that basically this plea agreement is a contract between you and the Government. They have obligations, and they're bound by their obligations. You have obligations. You're bound by your obligations, and you're also bound by statements that are made here in the plea agreement. So, for instance, if—you know, the plea agreements always have a factual basis in there, and you'll be bound by that factual basis. So [by] you know, agreeing to this plea agreement, you're agreeing that that factual basis is correct. You're also—the plea agreements also very often have something about the guidelines, you know, like, you agree this provision in the guidelines applies or you agree this one doesn't. Similarly, the Government is bound by things like, you know, they're not going to charge you with—they'll dismiss the charges from the indictment. So whatever you've agreed to in this plea agreement, whether it's something about the guidelines or the factual basis or, you know, these *waivers of your rights*, whatever you've agreed to here in the plea agreement, it does bind you. So you won't be able to change your mind later on. You won't be able to later on say, oh, I think that's incorrect, or I think that that's not the case or that's not true. In other words, you won't be able to change your mind about any of the

---

[4] As the Parties agreed at Defendant's March 2024 plea hearing, Defendant's appeal waiver does not prevent him from raising prosecutorial misconduct through a *collateral challenge*, as opposed to a direct appeal. *See* ECF No. 66 at PageID.419.

terms that you've agreed to here in the plea agreement. Just like any other contract, you're going to be bound by those terms. Does that make sense, sir?

**Defendant:** It does, Your Honor.

**The Court**: Is it fair to say, then, that this plea agreement represents the entire agreement between you and your lawyer and the Government?

**Defendant**: It is.

**The Court:** Good. Has anyone used any force or threats of violence to try to make you plead guilty today?

**Defendant**: No.

**The Court**: Are you pleading guilty freely and voluntarily?

**Defendant**: I am.

**The Court**: And is it your choice, and your choice alone, to plead guilty today?

**Defendant**: It is.

**The Court**: Are you pleading guilty because you are guilty?

**Defendant**: Yes, your Honor.

. . .

**Defense Counsel**: [Defendant], did you review the plea agreement carefully at the time you signed it?

**Defendant**: I have.

**Defense Counsel**: [D]o you acknowledge the accuracy of the factual basis[?]

**Defendant**: I do.

ECF No. 66 at PageID.427–30 (emphasis added).

Defendant avers he only "discovered" the alleged prosecutorial misconduct *after* pleading guilty. ECF No. 94-1 at PageID.884. But, as discussed, these prosecutorial misconduct allegations are wholly unsupported and contradicted by the record. And, even if supported, Defendant's claims do not necessarily undermine the knowingness or intelligent of his appeal waiver. *See United*

*States v. Ware*, No. 313CR26GFVTREW1, 2016 WL 9276026, at *4 (E.D. Ky. July 26, 2016), *report and recommendation adopted*, No. 313CR26GFVTREW1, 2017 WL 2876470 (E.D. Ky. July 6, 2017) ("Further, in the context of a guilty plea, *Brady* does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. *Brady* rights serve a part of the Constitution's basic 'fair trial' guarantee; therefore when a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees. As such, disclosure of material [] information is more appropriately described as [related] to the fairness of a trial, not . . . whether a plea is voluntary[.]" (internal citations and quotations omitted) (citing *United States v. Ruiz*, 536 U.S. 622 (2002))).

At bottom, Defendant's appeal waiver suggests his direct appeal is unlikely to result in reversal, thus his release on bond pending this appeal is unwarranted. *See, e.g.*, *United States v. Wysocki*, No. 8:10-CR-89-T-17EAJ, 2010 WL 4513428, at *2 (M.D. Fla. Nov. 2, 2010) (denying motion for bond pending appeal when defendant waived right to appeal in plea agreement); *United States v. Bratton*, No. 1:08-CR-125-JTC, 2009 WL 10708732, at *2 (N.D. Ga. May 22, 2009) (same); *United States v. Chartaev*, No. 2:11-CR-00514-TLN, 2022 WL 17584434, at *3 (E.D. Cal. Dec. 12, 2022) ("Because Defendant's appeal waiver in his signed plea agreement was unambiguous and because he knowingly and voluntarily waived his appeal rights, his appeal will likely be dismissed.").

In sum, Defendant has not shown that his appeal raises any substantial question or law or fact likely to result in reversal because his prosecutorial misconduct claims are wholly unexplained and unsupported by the record. Separate from the merits of these claims, Defendant waived his right to appeal his conviction on "any grounds," and has not even attempted to show that this

waiver was involuntary, unknowing, or unintelligent. Accordingly, Defendant is not entitled to be released on bond pending appeal, and his motion seeking this relief will be denied.

### III. Defendant's Motion to Delay Self-Reporting

On December 24, 2024—one week before he was directed to report to the BOP to begin his criminal sentence—Defendant filed a second Motion to Extend this date by thirty days. ECF No. 99. But, unlike Defendant's first motion which was sufficiently supported by medical records and notes from Defendant's treating physician, *see* ECF No. 85-1, Defendant does not show that he continues to suffer any medical complications. *See generally* ECF No. 99-1. To the contrary, Defendant avers his "medical progress is continuing to improve." *Id.* at PageID.903. Instead, Defendant seeks to extend his self-reporting date because of his pending appeal, specifically the briefing scheduling concerning the Government's motion to dismiss Defendant's appeal, filed before the Sixth Circuit. *Id.* at PageID.904 ("[T]he Sixth Circuit needs additional time to properly adjudicate the Government's Motion to Dismiss Appeal. []Defendant will file his timely Response to the Motion to Dismiss Appeal on Friday, December 27, 2024. With [Defendant]'s report date scheduled for January 1, 2024, that would leave the Government with one day to reply to the Defendant's answer and, on that same day, for the Sixth Circuit to adjudicate the Motion to Dismiss Appeal."); *see also United States v. Demasi*, Case No. 24-1806 (6th Cir. Dec. 13, 2024). But this Court will not allow the briefing schedule on Defendant's seemingly frivolous appeal to further delay his report date. Defendant has not cited—and this Court has not identified—any precedent or authority suggesting that pending appellate proceedings—let alone proceedings contrary to a valid appeal waiver—allow a defendant to avoid beginning his criminal sentence. *See generally* ECF No. 99-1. Defendant's Motion to Extend his Self-Report Date, ECF No. 99, will be denied as unsupported and unwarranted.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Release on Bond Pending Appeal, ECF No. 94, is **DENIED.**

Further, it is **ORDERED** that Defendant's Motion to Delay Reporting to Prison, ECF No. 99, is **DENIED.** Defendant should report as previously directed to FCI Terre Haute at 12:00 PM (noon) on January 1, 2025, unless otherwise directed by the BOP. *See* ECF No. 91 at PageID.795.

Dated: January 2, 2025              s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge